RICHARD ERNZEN, Plaintiff-Appellee, v. THE BOARD OF TRUSTEES OF THE BATAVIA FIREMEN'S PENSION FUND, Defendant-Appellant.

Second District    No. 80-7

Opinion filed June 5, 1981.—Rehearing denied July 6, 1981.

Thomas E. McGuire, of Des Plaines, for appellant.

Sam Alschuler and Paul A. Lewis, both of Alschuler, Putnam, McWethy & Weiss, of Aurora, for appellee.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:
On November 29, 1976, Richard Ernzen applied to the Board of Trustees of the Firemen's Pension Fund of the City of Batavia, Illinois, for

a disability pension. Ernzen, a former Batavia fireman, pursuant to the Illinois Pension Code applied for a service connected disability pension (Ill. Rev. Stat. 1977, ch. 108½, par. 4—110) and for occupational disease disability benefits (Ill. Rev. Stat. 1977, ch. 108½, par. 4—110.1). In 1978 following a series of hearings, the Board entered an order denying the application. Under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), Ernzen filed a complaint in the circuit court of Kane County to review the decision of the Board.

The circuit court ruled that the Board's decision was contrary to the manifest weight of the evidence and that Ernzen was entitled to a disability pension. The Board appeals raising two issues:

> (1) Whether the Board's order was contrary to the manifest weight of the evidence, and

> (2) Whether the trial court erred in denying the Board's request to remand the matter to the Board for the purpose of taking the "sworn in person" testimony of certain medical doctors.

The plaintiff, Ernzen, entered into employment with the Batavia Fire Department as a firefighter in January 1971. Beginning in March 1976 Ernzen suffered several episodes of dizziness, loss of coordination and blurred vision. He was referred to the Batavia city doctor, Dr. Sloniewicz. The doctor prescribed pills for dizziness and recommended that Ernzen be examined by an ear doctor. Ernzen, however, consulted a friend, Dr. Schuler, who immediately had Ernzen admitted to the Illinois Research Hospital where Schuler was a staff doctor. The plaintiff was hospitalized for two weeks. During that time he suffered no further symptoms.

As a result of the episodes of dizziness, Dr. Sloniewicz informed the fire chief that Ernzen was no longer able to perform fire fighter's duties. The doctor also indicated that Ernzen's illness was not job-related. The fire chief then requested that the Board of Fire and Police Commissioners terminate Ernzen from service. He also informed Ernzen that unless he resigned within 30 days, the fire chief would file charges with the Board of Fire and Police Commissioners alleging that because of Ernzen's physical condition, he could not perform his duties as a fireman and, therefore, should be discharged. Ernzen thereupon resigned, reserving his right to claim benefits under the Pension Code. Ernzen applied for a pension to the Board of Trustees of the Batavia Firemen's Pension Fund. A hearing was commenced under the provisions of section 4—125 of the Code. The parties agreed to waive these requirements of section 4—112 of the Code which would have required that the fireman applying for a pension be examined by three physicians practicing in the municipality.

On October 25, 1977, the Board commenced the hearing. At this first session, counsel for both sides agreed that only the applicant's physician,

Dr. Schuler, and the city physician, Dr. Sloniewicz, would testify and that this testimony would be supplemented by written material—letters and opinions—from other sources.

Dr. Sloniewicz then requested that all medical records and X rays taken while Ernzen was hospitalized at the University of Illinois Research Hospital be sent to him. While some of the records were promptly sent to Dr. Sloniewicz, he did not receive the X rays until much later and then only after several additional requests were made.

At this initial hearing, the Board heard the testimony of the applicant and his physician, Dr. Schuler. On December 6, 1977, the hearing was reconvened to take the testimony of the city physician. The matter was then adjourned to December 20, 1977. On that date no evidence was presented and the matter was continued to January 11, 1978. At that time the Board again heard the applicant's physician and the city physician.

At the request of the city physician, the matter was again continued so that the doctor could procure the rest of the applicant's medical records and the X rays from the University of Illinois Research Hospital. The hearing was finally resumed and completed on November 7, 1978.

At the various hearings the following testimony was heard. Richard Ernzen, age 28, testified that he joined the City of Batavia Fire Department January 15, 1971, and resigned from the department on November 6, 1976. In February 1976 he had an episode of blurred vision, loss of coordination, loss of use in the right arm and leg, dizziness, and sweating which lasted approximately 10 minutes. He had never experienced that before. He went to the hospital and was examined as an out-patient. The next morning, he had a similar, yet less severe, episode. He reported this to the fire chief who arranged an examination by the city physician, Dr. Sloniewicz. He was also examined by Dr. James Schuler, a resident at the University of Illinois Research Hospital in Chicago, who hospitalized him for two weeks. During his hospitalization he was told that he had arteriosclerosis and could, therefore, no longer be a fireman.

Ernzen also testified that as a lieutenant in the fire department he was exposed to every type of burning material that is in a modern home.

Dr. James Schuler testified that he is a member of the department of surgery at the University of Illinois Hospital. He was also chief resident and instructor of surgery. He examined Ernzen in March 1976. His initial impression was that Ernzen suffered from a neurologic problem, probably due to a decreased blood flow to the brain. This problem is usually due to arteriosclerosis or, in common language, hardening of the arteries leading to the brain. Dr. Schuler asked Dr. Wesley White to examine Ernzen. Dr. Schuler stated that Dr. White also concluded that Ernzen suffered a neurologic problem. Dr. Schuler arranged for an examination

by another neurologist, Dr. Srinath. That doctor confirmed the original impression. Ernzen was also examined by Dr. John Garvin, the chairman of the department of neurology.

Dr. Schuler testified that the arteriograms revealed a significant degree of narrowing in some of the arteries leading to the posterior aspect of the brain. He stated that the arteries involved were not accessible for surgical correction and, therefore, the patient was given medication to expand the arteries and increase the blood flow. After Ernzen's two-week hospitalization, he was treated as an out-patient by Drs. Romani and Srinath.

Dr. Schuler also submitted to the Board a letter written by Dr. Bertram Carnow, chairman of the division of occupational medicine, at Cook County Hospital, Chicago, Illinois. In this letter, Dr. Carnow indicated that he evaluated Ernzen in April of 1977. He also indicated that in his opinion Ernzen's condition was job-related. Dr. Schuler testified that he consulted with Dr. Carnow. Dr. Schuler testified that he shared Dr. Carnow's opinion that episodic or chronic exposure to the levels of carbon monoxide commonly found in a fire situation, and exposure to partially combusted plastics and polyvinyl chlorides are toxic to the lungs. He opined that this toxic exposure injures the arteries, narrowing them, thus interfering with the blood flow, blocking smaller arteries and causing cells to die or malfunction. He concluded that this toxic exposure caused Ernzen's episodes and that Ernzen's disability is, therefore, job-related, in that the inhalation of toxic fumes at least partially contributed to the premature arteriosclerosis.

Dr. Sloniewicz, a general practitioner and the city physician, testified at the continued hearing. He had examined Ernzen on February 21, 1976, the date of the initial episode. Ernzen's complaints were sudden numbness, inability to keep balance and dizziness. Dr. Sloniewicz prescribed Antivert, a medicine to help a person keep balance and sent him to the hospital for an electroencephalogram. Dr. Sloniewicz referred Ernzen to a specialist, Dr. Schoenfield, for evaluation of the balance apparatus in the middle ear. Thereafter, Dr. Sloniewicz never examined Ernzen. He did, however, advise the fire chief that because of Ernzen's condition he should not be retained as a fireman.

At this second hearing, Richard Ernzen was again called as a witness. He stated that under Dr. Schuler's care, he was taking a prescribed medication and that the seizures were now less frequent and less severe.

Dr. Schuler was also recalled. He testified that because the seizures were less frequent and less severe while Ernzen was on medication, he believed he had made a proper diagnosis.

When recalled, Dr. Sloniewicz stated that he did not believe that an arteriosclerosis block caused Ernzen's problem. The hearing was ad-

journed. The hearing did not reconvene until Dr. Sloniewicz received the medical records and X rays made at the University of Illinois Hospital.

Unfortunately, it took several months to obtain the X rays from that hospital. When they were finally received, another session of the Pension Board was held. At that session, Dr. Sloniewicz stated that Dr. Sugar, head of the department of neurosurgery at the University of Illinois at the Medical Center, Chicago, Illinois, after examining the reports and X rays, had written a letter to Dr. Sloniewicz. In that letter, Dr. Sugar stated "I also do not know of any other vasculopathy which is to be ascribed to carbon monoxide inhalation."

Dr. Sloniewicz testified that a written report of the doctor who took the original X rays at the University of Illinois Hospital disclosed that the plaintiff had a congenital defect in the arteries supplying blood to the right side of his brain. Due to that defect, all the blood to his brain was being supplied by the left arteries. Dr. Sloniewicz testified that persons who have such a defect might be able to function normally for the most part by receiving a sufficient supply of blood from the left artery. However, any sudden twisting, bending, etc., which would momentarily affect the supply of blood from the left side arteries, might cause a sudden, although temporary, dizziness, loss of vision, etc. He further explained that this condition was congenital, and not work-related.

Dr. Sloniewicz found no brain damage, just an insufficient blood supply to the brain from time to time. This, he opines, is caused by a congenital defect plus the arteriosclerotic plaques. Dr. Sloniewicz had reviewed the medical literature supplied by Dr. Schuler and stated he never found any author who accepted the theory that episodic carbon monoxide inhalation causes arteriosclerotic plaques in humans.

After a vote, the Board held 6 to 1 that the plaintiff's illness was not work-related and denied him a pension. Following this decision, the plaintiff filed for administrative review. The trial court reviewed the evidence, ruled that the decision was against the manifest weight of the evidence and reversed the Board's decision.

Certain well-established rules are applicable to judicial review of administrative decisions. Under section 11 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 274), the findings and conclusions of an administrative agency on questions of fact are *prima facie* true and correct. A reviewing court may set aside such findings only if they are against the manifest weight of the evidence. (*Keen v. Police Board* (1979), 73 Ill. App. 3d 65, 70; *Petraitis v. Board of Fire & Police Commissioners* (1975), 31 Ill. App. 3d 864, 867.) On review, it is not the duty of the court to weigh the evidence, but rather it is the court's duty to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Kreiser v. Police Board* (1976), 40 Ill. App. 3d

436, 440, *aff'd* (1977), 69 Ill. 2d 27; *Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260.) A judgment is against the manifest weight of the evidence when it appears from the record that an opposite conclusion is clearly evident. The decision of the Board will be reversed only where it is against the manifest weight of the evidence or it is without substantial foundation in the record. *Kohout v. Civil Service Com.* (1960), 28 Ill. App. 2d 388, 394.

An examination of the evidence reveals that the decision of the Board was not against the manifest weight of the evidence.

The primary evidence introduced by Ernzen was the testimony of Dr. Schuler. Dr. Schuler, a long-time personal friend of the plaintiff, admittedly based his opinion of a connection between arteriosclerosis and firefighting on reading several articles found in the Illinois Research Hospital Library. This research was done at the request of the plaintiff. Dr. Schuler's opinion is more or less rebutted by Dr. Sloniewicz, who read the same research articles, testified that the theories set out in the articles were not generally accepted by the medical community, and that he did not believe that Ernzen's five years as a Batavia fireman contributed to the arteriosclerosis. Dr. Sloniewicz opined that the plaintiff's symptoms were related either to a congenital defect which restricted the blood supply to his brain, or to stress in connection with a new business that Ernzen had started prior to his episodes of dizziness. Dr. Sloniewicz also commented on Ernzen's cigarette-smoking habits. At the hearings it was noted that cigarette smoking is a known factor causing arteriosclerosis.

In a letter, Dr. Carnow, a recognized authority on occupation diseases, stated that he believed that there is a connection between firefighting and the development of arteriosclerosis, Dr. Sugar, also an eminent authority, submitted a letter to Dr. Sloniewicz, which indicated that no such connection existed. Similarly, Dr. Srinath, who treated Ernzen as an out-patient, wrote a letter indicating that he saw no connection between Ernzen's firefighting and arteriosclerosis. Dr. Carnow's opinion seems to have been offset by the opinions of Drs. Sugar and Srinath.

To sum up, it appears that there was no balance of evidence in favor of the plaintiff. The Board was presented with equally qualified, yet conflicting, evidence. We emphasize that it "is particularly within the province of the administrative agency to resolve any conflict presented by the evidence [citation], and to determine the credibility of the witnesses. [Citation.]" *(Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 263.) The circuit court, therefore, erred in reweighing the evidence and setting aside the order of the Board. The plaintiff had the burden of proving that he was entitled to a pension under the Code, and the Board's

order denying the pension was not against the manifest weight of the evidence.

Because we have determined that the decision of the Board was not against the manifest weight of the evidence, it is unnecessary to address the other issue the Board has raised on appeal. The decision of the circuit court is reversed.

Reversed.

LINDBERG, J., concurs.

Mr. JUSTICE UNVERZAGT, dissenting:

I respectfully dissent from the opinion of the majority because I believe the trial court was correct in its rulings and should have been affirmed.

I am of the opinion that the plaintiff's claim for disability pension was clearly supported by the manifest weight of affirmative evidence in the record. The evidence which established a causal relationship between plaintiff's disability and the performance of his duties as a firefighter rests on the opinions presented in the testimony of Dr. Schuler and the written opinion of Dr. Carnow. Both of these doctors actually examined Ernzen. Dr. Carnow is a specialist of international reputation in occupational diseases; his specialization is in the discovery of the causes of occupational disease. Dr. Schuler is a surgeon. His expertise on this matter comes from his specific search of the available medical literature on the causes of arteriosclerosis in general and on the correlation between stress and inhalation of fumes with the early development of arteriosclerosis in firemen in particular. Each of these doctors stated it was his medical opinion that there was a causal relationship between the performance of the duties of a firefighter by the plaintiff and the development of his disability. No evidence was developed in any of the four hearings which conflicted with or contradicted the evidentiary elements on which the opinions of Doctors Schuler and Carnow were based. The diagnosis that plaintiff's condition was premature arteriosclerosis originally made in the report from the University of Illinois Research Hospital was conceded to be accurate by Dr. Sloniewicz. It was undisputed that plaintiff was exposed to stress and inhalation of smoke and toxic fumes in the performance of his duties as a firefighter. Stress, smoke and toxic fume inhalation are specially identified by the Act as being hazards of fire fighting.

"The General Assembly finds and declares that service in the Fire Department requires that firemen, in times of stress and danger

must perform unusual tasks; that by reason of their occupation, firemen are subject to exposure to great heat and to extreme cold in certain seasons while in performance of their duties; that by reason of their employment firemen are required to work in the midst of and are subject to heavy smoke fumes, and poisonous, toxic or chemical gases from fires. The General Assembly further finds and declares that all the aforementioned conditions exist and arise out of or in the course of such employment." Ill. Rev. Stat. 1979, ch. 108½, par. 4—110.1.

Dr. Schuler testified that arteriosclerosis is a multifactorial disease. He listed the factors which are known to correlate highly with premature development of arteriosclerosis. Of the five which are universally recognized by doctors, plaintiff definitely did not have three of the five factors, had one in a moderate amount, and the fifth factor was indeterminate. The doctor then examined plaintiff's exposure to several factors which current medical literature establishes as being related to premature arteriosclerosis. Of these, only the two which are recognized by the statute, those being stress and inhalation of smoke and fumes, appear in plaintiff's medical history. Thus, by the process of elimination, Dr. Schuler established the probability of a causal relationship between stress and smoke inhalation related to fire-fighting duties, and the development of plaintiff's disability. This analysis of the factors known to correlate with premature arteriosclerosis was not disputed by Dr. Sloniewicz. It appears also that since plaintiff has ceased to be a fireman he has not experienced additional severe attacks.

The manifest weight of the evidence in the record rests upon the opinions of two qualified physicians, each of whom made a thorough study of the current literature in the field. It also rests upon the diagnosis of the physicians at the research hospital, following some two weeks of extensive testing. This mass of evidence shows the chemical and physiological mechanisms by which stress and the inhalation of smoke and toxic fumes are connected with premature arteriosclerosis. The evidence also includes the medical conclusion based deductively upon a process of elimination of the factors medically known to correlate with premature arteriosclerosis. Finally, the evidence shows a clear relationship between taking medicine and ceasing to fight fires, with an improvement or stabilization in plaintiff's condition. All of this evidence taken against the background of the statutory recognition of plaintiff's exposure in the course of his fire-fighting duties to stress and the inhalation of smoke and toxic fumes. No medical evidence contradicting these various elements of proof appears in the record.

The expressed statutory purpose of the Firemen's Pension Fund is to benefit them, their widows, children and dependents. (Ill. Rev. Stat. 1979,

ch. 108½, par. 4—101.) It has been held that the pension laws of this State should be liberally construed to effectuate their purpose and in favor of those intended to be benefited. *Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260; *Rydberg v. Quinn* (1977), 54 Ill. App. 3d 578; *McCarthy v. Retirement Board* (1977), 55 Ill. App. 3d 330; *Board of Trustees v. Department of Insurance* (1976), 42 Ill. App. 3d 155.

I agree with the trial court that the decision of the Board denying the pension was erroneous and contrary to the manifest weight of the evidence and that the plaintiff should be entitled to a service-connected pension.

I would affirm the trial court.