RALPH SCALISE, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF THE WESTCHESTER FIREMEN'S PENSION FUND *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—92—3662

Opinion filed December 3, 1993.

Michael Rathsack, of Chicago, for appellant.

Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellees.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Ralph Scalise applied for a 65% line-of-duty disability pension (40 ILCS 5/4—110 (West 1992)) or an occupational disease pension (40 ILCS 5/4—110.1 (West 1992)), contending that his asthma prevented him from carrying out his duties as a fireman and that his asthma had been exacerbated by his employment. The Board of Trust-

ees of the Westchester Fireman's Pension Fund (Board) denied plaintiff's request for a line-of-duty pension but awarded plaintiff a 50% nonduty pension (40 ILCS 5/4—111 (West 1992)). Plaintiff sought administrative review, contending that the Board had not provided him with a proper hearing. The circuit court reversed and remanded, ordering the Board to permit plaintiff to present evidence and follow the law that exacerbation of a preexisting condition is a basis for awarding an in the line of duty pension. The Board again awarded plaintiff a 50% nonduty disability pension. The circuit court affirmed, finding that the Board's decision was not against the manifest weight of the evidence since none of the doctors stated conclusively that the plaintiff's condition was exacerbated by smoke, fire, or any other conditions attendant to fire fighting. Plaintiff brought this appeal.

We will review the testimony considered by the Board in reaching its determination that plaintiff did not show a causal connection between his fire fighting and the exacerbation of his asthma.

Plaintiff had been employed by the Westchester fire department since 1974. In 1984, plaintiff began treatment with Dr. Michael Rosenberg for allergies. Dr. Rosenberg issued two letter reports and an affidavit and also testified before the Board regarding plaintiff's condition.

Dr. Rosenberg stated in his letter of January 26, 1990, that plaintiff had a long history of nasal congestion, chronic sore throat, chest heaviness, cough and wheezing dyspnea. He further stated:

"Pulmonary tests have revealed asthma and this problem requires chronic medication for control. Recently, working as a firefighter and attending fires, his asthma is clearly becoming an increasing problem for him. I believe that his asthma is increasing in severity partially as a result of his exposure to fires. He has difficulty running up steps because of shortness of breath, carrying compressed air and a mask weighs him down more and makes him even more breathless.

I believe his job as a firefighter is in cross purposes with good management of his pulmonary condition. I do not feel that he should continue work as a firefighter."

On April 19, 1990, Dr. Rosenberg wrote another letter regarding plaintiff's condition wherein he stated:

"Due to his duties as a fireman his asthma is continuously exacerbated. This turns out to be true even if he is doing light duty in and around the firehouse due to his exposure to fumes in that capacity.

I believe that he would be better physically if he did not do light duty at this time."

When Dr. Rosenberg testified before the Board in October 1991,

he informed the Board that plaintiff has asthma and is being treated with medication for his condition. Dr. Rosenberg stated that the precise cause of asthma is unknown, but a major factor in plaintiff's asthma is irritants and pollutants. Dr. Rosenberg also stated that the fear, excitement and exertion that accompany fighting a fire could bother plaintiff's asthma. Dr. Rosenberg noted that allergies can make asthma active and that plaintiff has various allergies. However, according to Dr. Rosenberg, plaintiff's asthma is "non-allergic." Rather, Dr. Rosenberg determined that plaintiff's asthma is caused by irritants and pollutants since plaintiff's "airways are over sensitive *** [and] tend to react to a variety of irritants." Dr. Rosenberg stated that smoke does not cause asthma, but it exacerbates it. Dr. Rosenberg noted that plaintiff quit smoking in 1990. Dr. Rosenberg stated that while an air mask would help plaintiff avoid exposure to smoke, the mask would not remove or alleviate the asthma problems caused by fire fighting conditions other than smoke.

When Dr. Rosenberg was asked by the Board whether plaintiff's return to active status would be a threat to or exacerbate his condition, Dr. Rosenberg testified:

"I guess I have to tell you that it would depend on what active status meant. And this I need your help here. I think if it meant that he would be actively fighting fires, going out to houses that are burning and climbing up stairs to find the burning area, running around, I don't know how you do it exactly, I think that would exacerbate his condition.

If he were—I don't know whether you have situations where you work and process paper. That aspect, I think that would not exacerbate his condition."

Dr. Rosenberg stated his opinion, based on a reasonable degree of certainty, that smoke fumes and exertion from climbing stairs would make plaintiff's asthma worse. Dr. Rosenberg stated that in the seven years he had been treating plaintiff, plaintiff's condition has improved somewhat over time. Since 1986, plaintiff's condition has been stable, not getting any better or worse.

In his affidavit of February 11, 1992, Dr. Rosenberg stated that plaintiff's bronchial asthma is increasing in severity when exposed to fires. He stated that "as of June 20, 1990, Mr. Scalise's condition is increasing in severity as a result of his job." According to Dr. Rosenberg, exposure to smoke and fires exacerbates plaintiff's condition and carrying a compressed air tank and mask makes him even more breathless.

Plaintiff was examined in March 1990, by Dr. William Kuczerpa at the request of the Board. Dr. Kuczerpa stated that plaintiff's

"history was very typical of a patient suffering from asthma, in that his underlying respiratory condition was exacerbated by exposure to smoke, cold air and exercise." Dr. Kuczerpa concluded that plaintiff was asthmatic, but found it virtually impossible to tell if plaintiff's asthma was specifically induced by his job. He noted that plaintiff has a history of smoking, but is trying to quit and has almost succeeded. It was Dr. Kuczerpa's opinion that "very specific types of work that involves [sic] exposure to smoke and significant exercise would be a prime contributor to exacerbate this condition." Dr. Kuczerpa also stated that "the danger of exposure to the components of a fire are prime contributors to worsening of his underlying condition and I feel that any active participation in fighting fires would not be within the patient's interest or his fellow workers for whom would depend on him." He recommended that plaintiff not have any exposures that are attendant to his profession.

Plaintiff was also examined by Dr. Scott Field in March 1990, at the request of the Board. Dr. Field stated his belief that plaintiff has asthma. Dr. Field noted that it is preferable for asthmatics not to be around smoky environments and it is therefore preferable for plaintiff to have another line of work. He stated that it is difficult to say whether plaintiff's condition was caused by his job, but given plaintiff's 16 years as a fire fighter and his obvious exposure to numerous noxious elements, it would be impossible to rule out the possibility that plaintiff's condition was caused by fire fighting. Although Dr. Field noted that it is conceivable that plaintiff's asthma was naturally occurring, plaintiff had no family history to suggest this. According to Dr. Field, wearing an air mask may have a negative effect on plaintiff's condition since many asthmatics "do not tolerate masks over their face well." Dr. Field believed that fire fighting was not a desirable occupation for someone with asthma and that plaintiff should be granted a disability pension.

Dr. Field then did pulmonary function testing and issued a supplemental report. In this report, Dr. Field stated that plaintiff "definitely has obstructive lung disease." Dr. Field also stated that the severity of plaintiff's condition prevents him from fulfilling the duties of a captain since patients with asthma often react to irritants and, therefore, being around a smoky environment would be undesirable. He further stated that the only way to know whether or not an airmask would have a negative impact on plaintiff's condition would be to have him try to wear one.

In April 1990, Dr. Patrick Fahey also examined plaintiff at the Board's request. Dr. Fahey noted that the plaintiff's history of chest tightness, cough and shortness of breath is typical of asthma.

However, when Dr. Fahey examined plaintiff, his lungs were totally clear and his pulmonary function tests were within the normal limits. According to Dr. Fahey, this was not atypical of asthma patients, and he would have to examine plaintiff after an asthma attack in order to say for certain whether he had asthma. Dr. Fahey's general recommendation was that asthmatics avoid exposure to irritants or allergents which exacerbate their symptoms. He stated that in the case of a fireman, this would mean avoiding exposure to smoke or other noxious gases which may be encountered while fighting a fire. Dr. Fahey noted "asthma is not caused by performing a fireman's job," but it "can certainly be exacerbated by fire fighting." He further noted that it is not uncommon for asthmatics wearing air masks to complain that they cannot breath properly. Dr. Fahey concluded that if plaintiff could avoid irritants 95% of the time, he could perform his job. However, if plaintiff's exposure to smoke or irritants occurred regularly and affected his asthma, Dr. Fahey would recommend avoiding the job.

The sole issue on appeal is whether the Board's refusal to grant plaintiff a 65% disability pension was against the manifest weight of the evidence. It is not the duty of the reviewing court to reweigh the evidence, but rather it is the court's duty to ascertain whether the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Ernzen v. Board of Trustees of the Batavia Firemen's Pension Fund* (1981), 96 Ill. App. 3d 1143, 421 N.E.2d 1065.) A judgment is against the manifest weight of the evidence when an opposite conclusion is clearly evident. (*Ernzen*, 96 Ill. App. 3d at 1148.) Plaintiff, here, need not prove that his job as a fireman caused his asthma. Rather, an in-the-line-of-duty pension may be awarded if plaintiff proves that the exposure to smoke, fumes or some other condition of his employment exacerbated his asthmatic condition. See *Kellen v. Board of Trustees of the Firemen's Pension Fund* (1990), 194 Ill. App. 3d 573, 551 N.E.2d 264.

In support of his contention that a causal connection has been established between his employment and the exacerbation of his asthma, plaintiff relies primarily on *Gloss v. Board of Trustees, Firemen's Pension Fund* (1971), 132 Ill. App. 2d 736, 270 N.E.2d 472. In *Gloss*, the court found that the Board's decision denying plaintiff a line-of-duty pension was against the manifest weight of the evidence. In that case, however, the evidence linking plaintiff's asthma to his firefighting job was stronger than the evidence presented in the instant case. In *Gloss*, one doctor testified that plaintiff's condition was markedly exacerbated by smoke inhalation. Another doctor testified that plaintiff's continued exposure to smoke would lead to

damage to his lungs or emphysema, and that it was very important for plaintiff to avoid inhalation of smoke. Furthermore, the testimony that plaintiff's asthma was exacerbated by smoke was corroborated by the fact that after fighting fires, plaintiff suffered from bronchitis and chest pains and required medication or hospitalization to treat these conditions.

In the instant case, we need only determine whether there is competent evidence supporting the Board's decision that the exacerbation of plaintiff's asthma was not linked to his fire fighting. (See *Evert v. Board of Trustees of the Fire Fighters' Pension Fund* (1989), 180 Ill. App. 3d 656, 536 N.E.2d 143.) Dr. Rosenberg stated in his letters and affidavit that plaintiff's condition was exacerbated by his exposure to fires. Defendant points out that when Dr. Rosenberg testified before the Board, he stated merely that, "I think [plaintiff's duties as a fireman] would exacerbate his condition." However, Dr. Rosenberg also testified to the Board that he believed, to a reasonable degree of medical certainty, that smoke and exertion from fire fighting would exacerbate plaintiff's condition. Nonetheless, it is true that Dr. Rosenberg's testimony before the Board was different in some respects to the opinions given in his letters and affidavit. While Dr. Rosenberg stated in a letter that even light duty would exacerbate plaintiff's condition, he testified before the Board that plaintiff could do paper work. Also, Dr. Rosenberg stated in his letters in 1990 and affidavit in 1992 that plaintiff's condition was getting worse. Yet, Dr. Rosenberg testified before the Board in 1991 that plaintiff's condition was stable and had been for some time. Because of these inconsistencies, the Board may not have placed much weight on Dr. Rosenberg's testimony.

Dr. Kuczerpa was the only other doctor finding both that plaintiff has asthma and that "the danger of exposure to the components of a fire are prime contributors to worsening the underlying condition." Dr. Fahey was unable to determine that plaintiff has asthma, but he stated that if plaintiff does have asthma, the condition "can certainly be exacerbated by fire fighting." Although we recognize that the Board did award plaintiff a 50% disability pension, and therefore does not dispute that plaintiff has asthma, Dr. Fahey stated only that fire fighting *can* exacerbate asthma, not that it always does. Lastly, it should be noted that Dr. Field's testimony did not establish a link between fire fighting and plaintiff's condition since he testified only that fire fighting was not a desirable occupation for someone with asthma.

Furthermore, there is no evidence corroborating the testimony that fire fighting exacerbated plaintiff's asthma. Although Dr. Rosen-

berg had treated plaintiff for asthma for seven years, he produced no evidence showing that plaintiff's condition worsened after fighting a fire. In addition, plaintiff did not recall whether his asthma ever caused him to miss work. In fact, plaintiff's work records do not indicate that his asthma caused him to miss work after fighting a fire.

Accordingly, while there is some evidence linking plaintiff's fire fighting to the exacerbation of his asthma, there is also some competent evidence to support the Board's decision that a causal connection between fire fighting and the exacerbation of plaintiff's condition had not been established. For this reason, we conclude that the Board's decision was not against the manifest weight of the evidence.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.