**NATIONAL LABOR RELATIONS BOARD v. SOMERVILLE BUICK, Inc.**

No. 4606.

United States Court of Appeals First Circuit.

Jan. 28, 1952.

Dominick L. Manoli, Attorney, Washington, D. C. (George J. Bott, General Counsel, David P. Findling, Associate General Counsel, A. Norman Somers, Asst. General Counsel, and Roland E. Ginsburg, Attorney, all of Washington, D.C., on brief), for petitioner.

Julius Kirle, Boston, Mass., for respondent.

Before CLARK, WOODBURY, and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

The National Labor Relations Board, pursuant to the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., hereinafter called the Act, has petitioned this court for enforcement of its order of April 20, 1951, under § 10 of the Act, 29 U.S.C.A. § 160, against the respondent, Somerville Buick, Inc.

Somerville Buick, Inc., is a Massachusetts corporation engaged in the sale and service of new and used cars and parts of cars at Somerville, Massachusetts. It is a direct dealer of, and under franchise with, the General Motors Corporation. New cars are shipped to the respondent from General Motors Corporation assembly plant in Framingham, Mass. During 1949 the respondent purchased new cars valued at more than $500,000, and sold new and used cars valued at more than $600,000. No sales were made by the respondent outside the Commonwealth of Massachusetts.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and Local 841 thereof, affiliated with the American Federation of Labor, and the International Association of Machinists, unaffiliated, and Lodge 1898, unaffiliated, are labor organizations admitting to membership employees of the respondent. They are hereinafter collectively referred to as the union.

We are satisfied on the record that the Board has jurisdiction. See National Labor Relations Board v. Ken Rose Motors, Inc., 1 Cir., 1952, 193 F.2d 769.

The complaint alleges, in substance, that the respondent on or about April 20, 1950, discharged three of its employees, Daniel F. Ahern, Harry E. Gould, and Ernest L. Harris, because of their union activity; interrogated, threatened, and penalized its employees; on and after April 18, 1950, refused to bargain collectively with the union as the exclusive representative of its employees in an appropriate unit; by its conduct interfered with, restrained, and coerced employees in the exercise of rights guaranteed in Section 7 of the Act and engaged in unfair labor practices within the meaning of Section 8(a) (1) (3) and (5).

The respondent filed its answer in which it denied in substance that it had engaged in the unfair labor practices alleged.

Ahern, Gould and Harris assumed leadership of the self-organizational campaign begun at the respondent's shop in the spring of 1950. First steps were taken

early in March, when George Weir, a representative of the union, visited Harris at the latter's work bench. A few days later Weir returned to the shop and discussed organizing possibilities with both Harris and Ahern. Weir visited Harris at his home and left with him a number of cards authorizing the "Joint Committee for Organization for Automotive Workers" of the Teamsters and Machinists to represent the signing employees as collective bargaining agent. Harris gave a supply of these cards to Ahern and Gould. All three then solicited signatures among their fellow employees. By April 10, 1950, fifteen employees had signed authorization cards which Harris then turned over to Weir. After receipt of these cards, a meeting was held at a hotel in Boston and it was attended by all but one of these fifteen employees.

On April 18, 1950, representatives of the two unions wrote a joint letter to the respondent, claiming that the union represented a majority of its service department employees and requesting a meeting for the purpose of negotiating a collective bargaining agreement. So far as the record reveals, the respondent did not reply to the union's request.

On April 20, the respondent's general manager, John Soursourian, without previous notice, discharged Ahern, Gould and Harris.

On April 21, Peter Adamian, president of the respondent, assembled all its employees, including supervisors, in his office. He made a threat of closing down, expressed his dislike of unions and said that he did not want a union. At this meeting a vote of the employees was taken and only three of the twenty-three employees voting were in favor of the union although by April 10, eleven days before, fifteen of them had signed union authorization cards.

As indicated above, on the day before Adamian's speech and two days after the union's letter to the respondent, three of the leaders of the organizing effort, Ahern, Gould and Harris, were discharged. Other employees were interrogated about their union activity and membership by Adamian who did not testify in this proceeding.

■ The respondent's explanation as to why the three organizers were discharged, purportedly because "they were the least satisfactory of the employees at the time when there was a reduction due to the lack of business", does not stand up under close scrutiny. A new mechanic was hired the next day after the discharges of Ahern, Gould and Harris and the respondent advertised for mechanics in a Boston newspaper soon thereafter. The respondent gave letters of recommendation to the three discharged employees. The reasonable inference, as found by the examiner, was that the three men were discharged because of union activity. The evidence on the record considered as a whole supports this finding. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

■ We also conclude that the evidence on the record considered as a whole supports the finding that the respondent in violation of Section 8(a) (5) of the Act refused on and after April 21, 1950, to bargain collectively with the union. The respondent apparently ignored the union's request to bargain and engaged in an anti-union campaign. See National Labor Relations Board v. Somerset Shoe Co., 1 Cir., 111 F.2d 681, 688; National Labor Relations Board v. Kobritz, d/b/a Star Beef Company, 1 Cir., 1951, 193 F.2d 8; National Labor Relations Board v. Inter-City Advertising Co., 4 Cir., 190 F.2d 420, certiorari denied 72 S.Ct. 301.

Upon oral argument, counsel for respondent was unable to advance any adequate grounds to justify the return of this case to the Board for the taking of testimony on the appropriateness of the bargaining unit. In the circumstances here, no useful purpose would be served in referring the case to the Board for a further hearing in this regard. The complaint describes the unit as including "all employees * * * engaged in repairing, servicing and maintenance of automotive equipment including mechanics, bodymen,

painters, testers, helpers, apprentices, learners, truck drivers, partsmen, cleaners, washers, floormen and porters but excluding executives, foremen, salesmen, office and clerical employees, guards and supervisors as defined in Section 2(11) of the act, * * *." Although the respondent excepted to the unit, there was no indication in its argument how the respondent was prejudiced.

■ The Board has "broad discretion" in this matter. Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040. In other cases involving the same labor organizations and employers engaged in similar operations as the respondent, the Board has found such a unit to be appropriate. The unit here appears to fall within the pattern and is substantially the same as in the Ken Rose case, supra. The respondent in its brief concedes that such a factor is an important element.

■ We find no merit in the respondent's contention that the trial examiner and the Board committed prejudicial error in denying its motion for a postponement of the hearing which was held on December 12, 13 and 14, 1950. Mr. Kirle, who argued the case before us, was called into the case on Thursday, December 7, only a few days prior to the hearing before the trial examiner which was scheduled for Monday, December 11. He vigorously urged a postponement on the ground that he was unprepared because of lack of sleep occasioned by a serious family situation. His wife had to undergo a major operation on Monday, December 11. The Regional Director denied his request for a one week continuance as did the trial examiner and the Board. A postponement of one day was allowed by the Regional Office. The record discloses that respondent was represented at the hearing before the trial examiner on December 12th by Julius Kirle, Esq. and George Locus, Esq., and on December 13 and 14 by them and Joseph Sahagen, Esq. There is no showing that Mr. Locus, who filed an answer for the respondent on December 8, was not qualified to represent the respondent in this matter. Furthermore, the record discloses that the respondent as early as April 28, 1950, had formal notice that the union on April 27 had filed charges against it. It also had formal notice on November 30, 1950, of the issuance of the complaint on November 29. The respondent has not convinced us that it was prejudiced by the denial of a longer continuance It has not shown us that there was either a denial of due process or an abuse of discretion. See National Labor Relations Board v. A. J. Siris Products Corp., 4 Cir., 186 F.2d 502.

We have considered all of the respondent's contentions and find them to be without merit. The findings of the Board are supported by substantial evidence on the record considered as a whole. The petition of the Board for enforcement of its order should be granted.

A decree will be entered enforcing the order of the Board.