**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ALLEN'S I.G.A. FOODLINER, Respondent.**

**No. 79–1595.**

United States Court of Appeals, Sixth Circuit.

Argued April 13, 1981.

Decided May 28, 1981.

Elliott Moore, Deputy Associate Gen. Counsel, Steven Fetter, N.L.R.B., Washington, D. C., Emil C. Farkas, Director, Region 9, N.L.R.B., Cincinnati, Ohio, for petitioner.

Robert F. Houlihan and Donald Wagner, Lexington, Ky., for respondent.

Before LIVELY and JONES, Circuit Judges, and GILMORE, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

The Board petitions for enforcement of its Order that Allen's I.G.A. Foodliner (Allen's) violated Section 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1) and (3), by discharging an employee for his union activity. The Board also found that Allen's violated Section 8(a)(1) of the Act by announcing improved benefits in order to undermine a union and by sponsoring and participating in the circulation of a petition among employees withdrawing support from a union. 244 NLRB No. 25. For the reasons set forth below, we grant enforcement.

## EMPLOYEE DISCHARGE

Allen's, a Kentucky corporation, operates retail grocery establishments in Morehead, Kentucky. In the fall of 1976, the United Food and Commercial Workers International Union, Local 227 (the Union) began an organizational campaign among Allen's employees. Lowell Ray Adkins became actively involved in the Union's organizational campaign. He distributed union authorization cards and solicited employees to join the Union. An election was held on January 20, 1977, which the Union lost. Based upon the Union's objections to the election, a second election was ordered.

During the period between the two elections, Adkins assisted Union officials by arranging and participating in organizational meetings and visits. At a meeting of the meat and produce department employees, store manager Hub Moore stated that Allen's had "kept quiet long enough," and announced a new benefit plan. Adkins inquired from the floor whether the plan was similar to a company benefit plan in Louisville. Moore replied that the plans were similar, at least as to time-and-a-half for overtime pay. Adkins challenged Moore's statement, asserting that the Louisville plan called for double overtime pay, and produced a copy of the Louisville plan to support his assertion. On other occasions, Moore accused Adkins of "spreading lies" by telling employees he could get them improved wages and benefits; charged Adkins with having "more control over the employees" than Moore did; asked Adkins why he supported the Union; and, told Adkins that he (Moore) had "people in the store" that would tell Moore anything he wanted to know and "anything that was happening."

* Honorable Horace W. Gilmore, District Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

440

A second election was held on August 12, 1977. After the Union's victory had been announced, Moore angrily stated to Adkins and two other employees, "Well, I guess you all think you won. Well, you didn't win. You lost."

Moore continued to harass Adkins about his union involvement. Moore told Adkins that he would fire Adkins if he caught him "talking union on the job or on company property." Moore admonished Adkins for "costing the people of the store money" and told him that Allen's had a plan that would improve benefits for the employees, but that it couldn't be put into effect at this time "because of the [Union] problem" they had. Moore berated Adkins for a pro-union slogan written on the restroom wall, and told him he wanted it stopped.

Approximately two weeks after the second election, Moore discharged night manager Billy Snipes. Moore told Snipes that he (Moore) had been instructed to fire Snipes if he was "for the Union." Moore then interrogated Snipes concerning a conversation Snipes had had with Adkins a few days earlier. Moore offered Snipes a second chance provided he realized that there were "certain people you can talk to at work here." Moore also told Snipes to "stay away from the boys in produce and around back." Snipes refused and was fired.[1]

Several months after the second election, Adkins was elected shop steward and a member of the Union's negotiating committee. Moore told Adkins about a shop steward in Louisville that Moore had "thrown out of his office more times than he could count." Moore also told Adkins that the company had "finally" made the Louisville shop steward an assistant manager, and that he became the "best" assistant manager they had ever had. On April 7, 1978, Moore notified Adkins that he was being laid off "due to lack of business" and because he "rated below" his fellow employees.

It is well settled that an employer is prohibited from discharging an employee because of his union activities. *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969); *Vic Tanney Intern., Inc. v. NLRB*, 622 F.2d 237 (6th Cir. 1980). The Board determined that Allen's discharged Adkins in violation of the Act. In this appeal Allen's asserts that Adkins was discharged because of a "business retrenchment" and because of his poor performance. Substantial evidence supports the Board's finding that Allen's proffered reasons for Adkins' discharge were pretextual. Although a subsequent increase in business necessitated the hiring of several new employees and the promotion of others from part time to full time, Adkins was never recalled. Allen's announcement of an increased wage and benefit plan are inconsistent with an economic retrenchment. Additionally, by Allen's own admission, Adkins was a "good" and "dependable" worker for eight of his nine years. Only within the year preceding Adkins' discharge did Allen's begin to find fault with Adkins' attitude. Consequently, we hold that substantial evidence supports the Board's determination that Adkins' union activities were the sole reason for his discharge. *Wright Line*, 251 NLRB 150 (1980).

## BENEFIT PLAN/EMPLOYEE PETITION

It is a violation of Section 8(a)(1) of the Act for an employer to sponsor and participate in the circulation of a petition among employees withdrawing support from a union. There are "few more specific methods of interfering with employees' rights freely to choose or not to choose a bargaining representative than to have each summoned to the office of the employer and there to be asked to sign a prepared statement withdrawing from the Union." *NLRB v. H. W. Elson Bottling Co.*, 379 F.2d 223, 225 (6th Cir. 1967).

The granting or withholding of benefits in order to discourage union activi-

---

1. Snipes' discharge is not an issue in this appeal.

ty is proscribed by Section 8(a)(1) of the Act. In *NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435 (1964), the Supreme Court stated: "The danger inherent in well-timed increases in benefits is the suggestion of a fist inside a velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged." Applying these principles, we hold that substantial evidence supports the Board's finding that Allen's violated Section 8(a)(1) of the Act by sponsoring and participating in the circulation of the petition among employees withdrawing support from the Union and by announcing improved benefits in order to undermine the Union.

In May 1978, employee Ivan Connolly approached at least two other employees with a petition which stated, in effect, that "we, the employees of Allen's IGA, do not wish to have the Amalgamated Meat Cutters represent us." Neither employee wished to sign the petition immediately although several other employees had signed the petition. Employee Paula Henderson sought the advice of assistant manager Harold Chapman. He told her that it would be "wise" to sign the petition and she did. The other employee, Donna Withrow, was called to assistant manager Wavell De-Hart's office to explain her reasons for not signing. She replied that she wished to remain uninvolved and would wait until after a scheduled store meeting before making up her mind. DeHart said it would be "better" if she signed at once, whereupon she did sign.

The day after the DeHart-Withrow incident, store owner Hubert Allen held a meeting for Allen's employees. He announced the institution of a profit-sharing plan for employees and a raise in their wages. Allen apologized for not instituting these changes sooner, explaining that if he had, he "could have gotten into trouble." Allen stated he was glad it was "all over now" and the company and its employees would be "one big, happy family again."

Allen's sole contention concerning its sponsoring of the anti-union petition and announcement of benefits is a procedural one: that the allegations as to the Board's findings are barred by Section 10(b) of the Act. Section 10(b) of the Act states, in part:

> Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board . . . shall have power to issue . . . a complaint stating the charges in that respect . . . provided, that no complaint shall issue based upon any unfair labor practices occurring more than six months prior to the filing of the charge with the Board.

Allen's sponsored the anti-union petition and announced increased benefits in May of 1978. The *original charge* filed by the Union on July 10, 1978 did not specifically rely on Allen's anti-union petition and announcement of benefits. It only alleged that Allen's violated Section 8(a)(1) of the Act by discharging employees and "by other acts." Nor did the Board's *original complaint* allege that Allen's anti-union petition and announcement of increased benefits violated the Act. However, on February 2, 1979, two weeks before the administrative hearing, an *amended complaint* issued by the Board specifically alleged that Allen's anti-union petition and announcement of increased benefits contravened Section 8(a)(1) of the Act. Thus, Allen's argues that the findings of 8(a)(1) violations are not pursuant to a charge filed with the Board. We disagree.

As was aptly stated in *NLRB v. Central Power & Light Co.*, 425 F.2d 1318 (5th Cir. 1970):

> The charge is thus not intended to be a detailed pleading or to specify the issues ultimately to be raised before the [Administrative Law Judge]; the Board's complaint serves that function. All that the requirement is really concerned about is that the instigation of an investigation and complaint proceed under a formal charge made by the party aggrieved and not from the Board's own initiative. Accordingly, general allegations such as

that the employer "by other acts and conduct ... interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in Section 7 of the Act," ... are legally sufficient to cause inclusion of other acts if they are sufficiently related to the specific acts alleged. And sufficient relation has generally been found between acts that are part of the same course of conduct, such as a single campaign against a union. *Id.* at 1320 (citations and footnotes omitted). *Accord, NLRB v. Bin-Dicator Co.,* 356 F.2d 210, 214 (6th Cir. 1966). In this case, the Union's charge was legally sufficient to include Allen's sponsorship of the anti-union petition and its announcement of benefits. Both of these were part of Allen's single course of conduct to undermine the union and as such they were sufficiently "related to" Adkins' contemporaneous discharge to be raised by the union's charge.[2] Absent this relationship between the particular acts and "other acts" alleged in a charge, a party's allegations must be pled with factual detail and specificity.

Accordingly, the Board's order is ENFORCED.

2. The Union's charge was made within six months of the time the violations took place, as required by Section 10(b) of the Act.