THE ROCKFORD TOWNSHIP HIGHWAY DEPARTMENT, Petitioner-Appellant, v. THE ILLINOIS STATE LABOR RELATIONS BOARD *et al.*, Respondents-Appellees.

Second District No. 86—0242

Opinion filed March 30, 1987.

864

Petition for review of order of State Labor Relations Board.

Peter DeBruyne, of DeBruyne, Yalden & Olsen, of Rockford, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William D. Frazier and Roma Jones Stewart, Assistant Attorneys General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Petitioner, Rockford Township highway department (Rockford), seeks administrative review of the State Labor Relations Board's (Board) decision holding that the discharge of six of its employees constituted an unfair labor practice in violation of the Illinois Public Labor Relations Act (IPLRA) (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(2)). The questions presented for review are: (1) whether the Board had jurisdiction under the statute to decide the unfair labor practice claims; and (2) whether the Board's finding that six employees were discharged in violation of section 10(a)(2) of the Act is supported by the manifest weight of the evidence. We affirm.

The Rockford County highway department is a governmental unit responsible for maintaining over 200 miles of road within the boundaries of Rockford Township. Rockford Township is one of 14 townships located within Winnebago County. Shirley Scherer was elected commissioner of the department on April 2, 1985, and took office on May 6, 1985. Scherer had been employed as a secretary by Rockford since 1976. On December 7, 1984, she was discharged by commissioner Fassoni on the ground that she caused dissension among the other employees, and that she was rude on the phone. During the last years of her tenure, a group of employees whom Scherer referred to as the "goon squad," consisting of Frank Fasula, Anthony Fasula, Mark Sommers, James Ballestriere, Jerome Tankersley, and Steve Rondone, allegedly harassed her. They also allegedly received easier work assignments because of their friendship with former commissioner Fassoni.

After being discharged from her secretarial position, Scherer became a candidate for the office of commissioner of the department to replace Fassoni. During her campaign, Scherer stated that certain employees had been hired "primarily upon political friendships and not abilities," and she promised that these employees would be replaced. Furthermore, she made statements in the local press that if elected she "would clear the place out" and treat loyal workers fairly and with respect. Scherer claimed that a department crew consisting of 24 employees was "too large" as the department had traditionally functioned well with a crew of 17 or 18. Scherer's 1985 campaign was taking place against a backdrop of union representation activities dating back to 1984.

On September 11, 1984, the International Association of Machinists and Aerospace Workers, Unity Lodge 1553 (Machinists) filed a petition for certification of representative pursuant to section 9 of

the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1609(a)(1)) (case No. S—RC—33) seeking to represent certain employees of the Rockford highway department.

On March 7, 1985, a hearing was held at the Board's Chicago office regarding this petition. At the hearing the following exchanges took place:

"HEARING OFFICER: Can it be stipulated that the Rockford Township Highway Department is a public employer within the meaning of Section 3(n) of the Illinois Public Relations Act and that the Board has jurisdiction over this matter under Section 20(b) of the Act *in that there was an agreement in effect* between the Rockford Township Employee's Association and the Rockford Township Highway Commission as of July 1, 1984?

\* \* \*

COUNSEL FOR ROCKFORD: *As the Employer would* [sic] *stipulate to that* with the understanding that the—that stipulation is in exchange for the stipulation or concession from the Union that the Foreman and Secretary slots at the Rockford Township Highway Department are exempt positions and not occupied by *employees within the meaning of the Act.*

HEARING OFFICER: Okay.

COUNSEL FOR MACHINISTS: *Agreed.*

\* \* \*

HEARING OFFICER: It is also my understanding that there has been some *historical bargaining* between a Rockford Township Employees Association and the Rockford Township Highway Department. *There was such an agreement in writing effective July 1, 1984,* however, that agreement does not and did not accurately or in any way state what the Bargaining Unit consisted of; what positions, what titles. So there is nothing to show us what the historic Unit was, is that correct?

COUNSEL FOR ROCKFORD: *Correct.*

COUNSEL FOR MACHINISTS: Correct." (Emphasis added.)

Following the hearing, the Board Hearing Officer issued on March 22, 1985, a recommended decision and direction of election in which he stated:

"The parties stipulated, and I find, that the Rockford Township Highway Department is a public employer within the meaning of sec. 3(n) of the Act, and that the Board has jurisdiction over this matter under sec. 20(b) of the Act, in that

there was a collective bargaining agreement in effect on July 1, 1984, the effective date of the Act, which covered the petitioned for unit of the Employer's employees.

\* \* \*

The parties stipulated, and I find, that the following unit, which was in existence on the effective date of this Act, is an appropriate unit for the purposes of collective bargaining:

> All highway and road maintenance employees of the Rockford Township Highway Department with the job titles of Laborer and Mechanic, but excluding the Rockford Township Highway Department Commissioner, the Foreman and the Secretary, and all confidential, managerial, and supervisory employees as defined by the Act, and all other employees of the Rockford Township Highway Department."

Rockford filed exceptions to the Hearing Officer's recommendations challenging the jurisdictional findings on the ground that the stipulations entered into by Rockford and the Machinists were restricted to only the existence of an agreement as of July 1, 1984, only, but not to the existence of a bargaining unit. Consequently, Rockford contended that the Board had to first decide whether "a stipulation to jurisdiction based on a factual predicate of a 'agreement' on July 1, 1984, gives it jurisdiction." These exceptions were subsequently withdrawn on the condition that no election would be held in the appropriate unit until May 17, 1985.

Meanwhile, on March 8, 1985, all of the Rockford workers had assembled at the end of the workday in a garage by the parking lot where they usually congregated. Frank Fasula brought out several blank Teamsters' applications for membership cards. The following employees signed cards: James Ballestiere, Michael Latino, Steve Montalbano, John Bogdonas, Jack Mandala, Steve Rondone, Mark DePorter, Anthony Fasula, Frank Fasula, Mark Sommers, Tim Scott and Jerome Tankersley.

Scherer took office on May 6, 1985. At the close of her first day in office, consistent with her campaign promise she discharged 12 of the then 23 employees. The 12 employees dismissed that day were the same 12 that had signed the Teamster's cards on March 8, 1985. Each of these employees was given the following letter:

> "You are hereby notified that your employment with the Rockford Township Highway Department will be terminated as of 3:30 p.m. on this date, May 6, 1985."

No reasons were stated for the discharge. Soon after the discharge, Scherer hired two people to work full time and five people to work

temporarily for the summer.

On April 18, 1985, the General Chauffeurs, Helpers and Sales-drivers, Teamsters Local Union No. 325, affiliated with the International Brotherhood of Teamsters (Teamsters) filed a petition for intervention in the representation proceeding. The election was conducted on May 17, 1985, and of the 23 eligible voters, 22 cast ballots. All ballots were challenged on May 23, 1985, by both Machinists and Rockford, who filed objections to the election in accordance with section 1210.150 of the rules and regulations of the Illinois Labor Relations Board (80 Ill. Admin. Code sec. 1210.150 (1985)). Rockford objected primarily on two grounds: (1) that Frank Fasula was a supervisor and, furthermore, not employed by Rockford at the time of the ballot casting; and (2) that John Bogdonas, Mark DePorter, Steve Montalbano, Jack Mandala, Tim Scott, Jerome Tankersley, Anthony Fasula, Michael Latino, Steven Rondone and Mark Sommers should not have been allowed to vote, as they were no longer employed by Rockford. The Machinists also objected to the eligibility of one voter on the grounds that he was not an employee at the time of the balloting.

The Board's chief administrator issued on July 19, 1985, a report on challenges and objections in which he dismissed the challenges to the ballot of Frank Fasula, finding that Fasula was not a supervisor on the date of the election. Furthermore, the chief administrator found that sufficient issues were raised as to the employee status of Jerome Tankersley, James Ballestriere, John Bondonas, Mark DePorter, Steve Montalbano, Steve Rondone and Tim Scott to require resolution by hearing.

On May 16, 1985, the Teamsters filed a charge, pursuant to section 11 of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1611) (case No. S-CA-59), alleging that Rockford had engaged in unfair labor practices in violation of sections 10(a)(3) and 10(b)(5) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(3), 1610(b)(5)) by discharging 12 employees who had signed Teamsters' cards. Subsequently, the Teamsters amended their charge to allege that Rockford had violated sections 10(a)(2) and 10(a)(5) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, pars. 1610(a)(2), 1610(a)(5)), and a complaint for hearing was issued on July 17, 1985. On July 18, 1985, the Board's chief administrator consolidated for hearing the ballot challenges (case No. 5—RC—33) and the unfair labor practices claim (case No. 5—CA—59). The consolidated hearing took place on August 15, 1985, at the Board's office in Chicago.

At the consolidated hearing, testimony was presented regarding

the circumstances surrounding the discharge of the 12 employees, the actual job duties, and responsibilities of the two employees challenged by Rockford on the basis of their status. After the hearing, on December 27, 1985, the Hearing Officer issued a recommended decision reaffirming the Board's jurisdiction under section 20(b) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1620(b)), and, thus, committed an unfair labor practice by its discharge of 6 of the 12 employees:

> "Upholding [Scherer's] campaign promise to reduce the number of employees at the Department would be a legitimate business justification for discharging *** six employees. The record shows that the Department had operated with between 11 and 16 employees for seven of the past eight years. Thus had Scherer simply discharged these employees and taken no further action, I would be inclined to believe that her actions were motivated solely by her campaign promise to reduce the work force. However, almost immediately after discharging these six employees, Scherer hired seven others, two full-time employees and five summer employees. Because Scherer replaced the six employees that she discharged, I find that her claimed motivation fails. Where the reasons proffered by the employer for its actions are shown to be pretextual the Board should presume that the real reason was unlawful. See *Med West Health Care Management Corp.*, 276 NLRB No. 146 (September 30, 1985); *Superior Container Inc.*, 276 NLRB No. 55 (September 5, 1985); *NLRB v. Sommerville Buick, Inc.*, 194 F.2d 56 (1st Cir. 1952). I therefore presume that Scherer was motivated at least in part by these employees' union activity. Because I find that Scherer was motivated at least in part by these employees' union activity, I find that she has violated Section 10(a)(2) of the Act. *State of Illinois, Department of Corrections & Central Management Services (Gerald Morgan)* 1 PERI Par. 2020 (ISLRB 1985)."

The Hearing Officer further found that these six employees were "public employees" within the meaning of the IPLRA on May 17, 1985, the day of the election, and, consequently, ordered that their ballots be counted. He also ordered various remedies for the discharged employees, ranging from reinstatement with back pay to placing some of these workers on preferential hiring lists.

After exceptions were filed by Rockford, the recommended decision and order of the Hearing Officer were accepted and adopted by the Board in a decision and order issued on February 28, 1986. This

administrative appeal ensued pursuant to section 11(e) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1611(e)).

 As this case is before us on administrative review, it is not the duty of the court to weigh evidence, but rather it is the court's duty to ascertain if the findings and decision of the administrative agency are against the manifest weight of the evidence. (*Ernzen v. Board of Trustees* (1981), 96 Ill. App. 3d 1143, 1147, 421 N.E.2d 1065; *McHugh v. Civil Service Com.* (1979), 68 Ill. App. 3d 575, 579, 386 N.E.2d 573.) An agency finding is "against the manifest weight of the evidence" if an opposite conclusion is clearly evident. (*Burke v. Board of Review* (1985), 132 Ill. App. 3d 1094, 1100, 477 N.E.2d 1351; *Doran v. Department of Labor* (1983), 116 Ill. App. 3d 471, 474, 452 N.E.2d 118.) On judicial review the appellant has the burden of proving the issues raised in the complaint. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1095, 494 N.E.2d 171; *Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 745, 347 N.E.2d 270.) It is not the function of this court to substitute its judgment for that of the administrative agency, but to insure that an objective, rational decision was arrived at after a fair hearing at which competent evidence was introduced. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1095, 494 N.E.2d 171; *Gordan v. Board of Trustees of Firemen's Pension Fund* (1966), 77 Ill. App. 2d 234, 240, 222 N.E.2d 28.) Therefore, our review of the Board's decision is framed by the principles outlined above.

Rockford's first contention is that the Board did not have jurisdiction under section 20(b) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1620(b)) to decide the unfair labor practices claim. We disagree. Section 20(b) provides:

"This Act shall not be applicable to units of local government employing less than 35 employees [25 employees before January 1, 1986], except with respect to bargaining units in existence on the effective date of this Act."

Clearly the Board has no jurisdiction under the first criterion in that the Rockford highway department employed less than 25 employees at the time of the events giving rise to this action. Therefore, the only question is whether a bargaining unit existed as of July 1, 1984, when the IPLRA was enacted.

Although inartfully drawn, Rockford's argument that the Board lacked jurisdiction is based on two assertions: (1) a factual interpretation of its stipulation; and (2) a legal interpretation of the effects of the stipulation. We will address the factual arguments first.

At the initial representation hearing, on March 7, 1985, Rockford

stipulated regarding the existence of an agreement between the Rockford Township Employee's Association and the Rockford highway commission as of July 1, 1984. This stipulation was "in exchange" for the union's stipulation that the foreman and secretary positions were exempt positions and, thus, ineligible to vote in representation elections. The Board in its decision stated:

"In the original representation case hearing, the Employer clearly stipulated to the underlying facts which put it within our jurisdiction. *** Once an issue has been fully litigated in a representation proceeding, it cannot be relitigated in a subsequent related proceeding. *Kline's Potato Chips* 274 NLRB No. 88 (1985); *Top Form Mills* 273 NLRB No. 158 (1984). Having found that the Employer so stipulated, and that the stipulation was factually supported, we find that, absent changed circumstances, the Employer must be bound by that stipulation. Specifically, the employer stipulated that it had a bargaining unit in existence on the effective date of the Act, so that pursuant to section 20(b) of the Act, this Board has jurisdiction. The evidence adduced in the original hearing demonstrated that there was a collective bargaining agreement in effect for the unit sought herein from approximately July 14, 1981 through July 14, 1984 between the Employer and the Rockford Township Employees Association."

■ We agree with the Board's finding that Rockford's stipulation regarding the existence of an agreement gave rise to an inference of bargaining and, therefore, of a bargaining unit. Furthermore, this inference was clearly explored by the Hearing Officer with counsel for both Rockford and the Machinists. Rockford agreed with the Hearing Officer's interpretation that the existence of the agreement was indicative of *"historical bargaining* between a Rockford Township Employees Association and the Rockford Township Highway Department." The Hearing Officer did point out that the agreement did not "accurately or in any way state what the Bargaining Unit consisted of" and that there was no documentation to show what the "historic unit" was. We reject Rockford's contention that the mere lack of documentary evidence regarding the composition of the "unit" negates its very existence, nor has Rockford cited any authority for that proposition.

Next, Rockford asserts that its stipulation was a *quid pro quo* for the union's stipulation that the foreman and secretary's slots were not to be considered "employees" under the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1603(n)). Rockford argues that its stipulation

was invalidated when two employees it considered to be outside the scope of the unit, as they functioned as secretary and foreman, respectively, were allowed by the Board to vote in representation elections. We will not address the Board's contention that such an interpretation by Rockford of its stipulation would be creating a new legal concept, "a conditional stipulation." Suffice it to say that even if such a concept existed, the condition was clearly fulfilled in this case. The union stipulated that the "slots" of foreman and secretary would not be included in the bargaining unit, not that specific individuals would not be eligible to vote because of their status as secretary and foreman. The Board's bargaining unit designation does not include the position of foreman or secretary. The Board's findings regarding the status of the two challenged employees is not before us for review. Therefore, we will address the arguments raised by the Board regarding the reviewability of representation proceedings.

▮ Rockford's legal arguments stem from its contention that, at the unfair labor practices hearing, it was not allowed to make an offer of proof or, otherwise, introduce evidence regarding the fact that no bargaining unit was in existence as of July 1, 1984. A stipulation is an agreement between parties or their attorneys with respect to business before the court. (*Material Service Corp. v. Department of Revenue* (1982), 105 Ill. App. 3d 74, 79, 434 N.E.2d 763, *aff'd* (1983), 98 Ill. 2d 382, 457 N.E.2d 9; *Village of Schaumburg v. Franberg* (1981), 99 Ill. App. 3d 1, 4, 424 N.E.2d 1239.) Generally, matters which have been stipulated by the parties cannot be disputed on appeal. (*People v. Wiggins* (1973), 9 Ill. App. 3d 1078, 1079, 293 N.E.2d 696; *People v. Morris* (1972), 6 Ill. App. 3d 136, 139, 285 N.E.2d 247.) The Board, thus, argues that once Rockford stipulated regarding the existence of a bargaining unit, it may not later challenge the existence of those facts.

▮ On the other hand, we have to determine the specific factual predicate underlying Rockford's stipulation. Rockford stipulated to the existence of an agreement, not of a bargaining unit. In analyzing this stipulation, we are mindful of the fact that parties cannot bind the court by stipulating to the legal effect of facts. (*National Bank v. Murphy* (1943), 384 Ill. 61, 64, 50 N.E.2d 748; *People v. Saunders* (1985), 135 Ill. App. 3d 594, 604, 482 N.E.2d 85; accord *Saviano v. Commissioner of Internal Revenue* (7th Cir. 1985), 765 F.2d 643.) Therefore, our inquiry focuses on whether the Board's inference regarding the existence of the bargaining unit, albeit unidentified, is a question of law or a question of fact.

▮▮ As the legislative history of the ILPRA indicates a close

parallel between the Illinois act and the National Labor Relations Act (NLRA) (83d Ill. Gen. Assem., Senate Proceedings, May 27, 1983, at 298-99), we will follow Federal law in resolving this question. Federal courts have repeatedly held that bargaining unit issues are fact questions within the purview of the National Labor Relations Board (NLRB). (*NLRB v. Speedway Petroleum Division of Emro Marketing Co.* (7th Cir. 1985), 768 F.2d 151; *NLRB v. C.H. Sprague & Son Co.* (1st Cir. 1970), 428 F.2d 938.) Even in mixed questions of fact and law, requiring an examination of the legal effect of a given set of facts, the NLRB's resolution of such questions is to be upheld if reasonable, consistent with the NLRA, and based on findings supported by substantial evidence. (*NLRB v. Yeshiva University* (1980), 444 U.S. 672, 691, 63 L. Ed. 2d 115, 131, 100 S. Ct. 856, 867; *NLRB v. L. B. Priester & Son, Inc.* (5th Cir. 1982), 669 F.2d 355.) Furthermore, where the Board's inferences are reasonable, they are entitled to acceptance on review. *Hedstrom Co. v. NLRB* (3d Cir. 1980), 629 F.2d 305, 316, *cert. denied* (1981), 450 U.S. 996, 68 L. Ed. 2d 196, 101 S. Ct. 1699.

The Board's finding that there was a bargaining unit in effect as of July 1, 1984, is supported by substantial evidence in the record. The 1981 contract between the Rockford road district employees and the Rockford highway department has the indicia of a collective-bargaining agreement in that it addresses mandatory bargaining subjects: wages, hours and other conditions of employment. (Ill. Rev. Stat. 1985, ch. 48, par. 1606(a); see *NLRB v. Wooster Division of Borg-Warner Corp.* (1958), 356 U.S. 342, 2 L. Ed. 2d 823, 78 S. Ct. 718.) Therefore, we agree with the Board's interpretation that since Rockford had stipulated to facts it is bound by its stipulation. *People v. Levisen* (1950), 404 Ill. 574, 578, 90 N.E.2d 213.

■■■ We agree with Rockford that it could not stipulate to jurisdiction since jurisdiction cannot be conferred by acquiescence or stipulation of the parties. (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 523, 461 N.E.2d 505; *People ex rel. Scott v. Janson* (1973), 10 Ill. App. 3d 787, 793, 295 N.E.2d 140, *rev'd on other grounds* (1974), 57 Ill. 2d 451, 312 N.E.2d 620.) The same principle applies to the jurisdiction of administrative agencies. (*Klaren v. Board of Fire & Police Commissioners* (1968), 99 Ill. App. 2d 356, 360, 240 N.E.2d 535.) But since, as we indicated above, Rockford stipulated to facts which led to the Board's conclusion that a bargaining unit existed as of July 1, 1984, the Board had jurisdiction over the consolidated cases.

Rockford challenges the Board's position by asserting that, had a bargaining unit indeed existed, the Board would not have had to hold a hearing to determine what the unit should be. This contention is without merit in view of the record in this case. The Hearing Officer did establish that there has been some "historical bargaining" but that the composition of the bargaining unit had not been readily ascertainable. Therefore, a hearing would be necessary to decide which positions would be part of the unit. Ill. Rev. Stat. 1985, ch. 48, par. 1603(s)(1).

■■■ We conclude that since Rockford stipulated to facts, it had, indeed, litigated the issue of the existence of the bargaining unit in the original representation hearing. The Board argues that consistent with *Klines Potato Chips, Inc.* (1985), 274 NLRB 628, and *Top Form Mills, Inc.* (1984), 273 NLRB 1246, Rockford is not entitled to relitigate this issue in the unfair labor practices hearing. The cases cited by the Board involved violations of section 8(a)(5) of the NLRA (29 U.S.C. sec. 158(a)(5)), which deals with employer refusal to bargain with a union. In each of those cases, the employer refused to bargain on the basis that the union was properly certified by the NLRB over objections of the employer which had been previously raised and litigated at the representation hearing. The relitigation bar was first enunciated by the Supreme Court in *Pittsburgh Plate Glass Co. v. NLRB* (1941), 313 U.S. 146, 85 L. Ed. 1251, 61 S. Ct. 908, which held that certification by the NLRB of the appropriate unit for selection of a collective-bargaining representative of employees is not reviewable under the section of the NLRA providing for review of orders of the Board prohibiting unfair labor practices. This holding has been codified by the NLRB in its own regulation 102.67(f) (29 C.F.R. 102.67(f)), which provides:

"The parties may, at any time, waive their right to request review. Failure to request review shall preclude such parties from relitigation, in any subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of the regional directors action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding."

This section has been interpreted to stand for the proposition that it bars relitigation of an issue determined in a representation hearing only when the subsequent hearing is a "related" proceeding. (*NLRB v. Dillon Stores* (10th Cir. 1981), 643 F.2d 687.) Most Federal courts addressing the issue have concluded that unfair labor practice pro-

ceedings under section 8(a)(1) or (3) of the NLRA (29 U.S.C. secs. 158(a)(1), 158(a)(3))[1], are not so related to prior representation hearings that relitigation of common issues is precluded. *Intermountain Rural Electric Association v. NLRB* (10th Cir. 1984), 732 F.2d 754, *cert. denied* (1984), 469 U.S. 932, 83 L. Ed. 2d 264, 105 S. Ct. 327; *Rock Hill Telephone Co. v. NLRB* (4th Cir. 1979), 605 F.2d 139; *Amalgamated Clothing Workers of America v. NLRB* (D.C. Cir. 1966), 365 F.2d 898.

■■ From our analysis of Federal court decisions regarding whether certain issues raised during representation hearings may be relitigated during unfair labor practices hearings, we conclude that the Board erred in refusing Rockford's offer of proof regarding the existence of the bargaining unit. At the unfair labor practices hearing Rockford attempted to present testimony by Scherer that the July 14, 1981, contract between the Rockford road district employees and the Rockford highway department was not the result of bargaining. At the time of the signing, Scherer was the secretary of the department, and according to Rockford, she was to testify that this contract was simply an expression of employment policy, rather than a collective-bargaining contract.

■■ We also find that the Board's error is harmless in that its finding that it had jurisdiction over the unfair labor practices claim under section 20(b) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1620(b)) was supported by substantial evidence in the record. (See *Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 502, 415 N.E.2d 1249; *La Grange Bank No. 1713 v. Du Page County Board of Review* (1979), 79 Ill. App. 3d 474, 478, 398 N.E.2d 992.) The Board's determination of the jurisdiction issue was based on an inference from the existence of the agreement and the parties' acquiescence to some historical bargaining. As discussed above, this is a factual determination which is not to be disturbed on appeal unless it is against the manifest weight of the evidence. *Fenyes v. State Employees' Retirement System* (1959), 17 Ill. 2d 106, 111, 160 N.E.2d 810; *Brengola-Sorrentino v. Department of Public*

---

[1]Under section 8 of the NLRA "it shall be an unfair labor practice for one employer:

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed [under the NLRA].

&ast;&ast;&ast;

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization."

*Aid* (1984), 129 Ill. App. 3d 566, 571, 472 N.E.2d 877.

Next, Rockford contends that the Board's finding of an unfair labor practice in the discharge of six employees was not supported by substantial evidence. We disagree. We note that respondents do not contest the Board's finding regarding the other six employees who were discharged at the same time. We express no opinion regarding this fact.

Section 10(a)(2) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(2)) provides:

> "It shall be an unfair labor practice for an employer or its agents:
> ***
>
> (2) to discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization."

This section parallels section 8(a)(3) of the NLRA (29 U.S.C. sec. 158(a)(3)). Since section 10(a)(2) has not yet been judicially interpreted by the Illinois Appellate Court, we are guided in our analysis by the Federal courts to determine whether the discharge of Bogdonas, DePorter, Latino, Mandala, Montalbano and Scott constituted an unfair labor practice.

In an unfair labor practice case under section 8(a)(3) of the NLRA (29 U.S.C. par. 158(a)(3)), the General Counsel, who is the moving party, has the burden of proving the violation (*Miller Electric Manufacturing Co. v. NLRB* (7th Cir. 1959), 265 F.2d 225) by a preponderance of the evidence (*NLRB v. West Point Manufacturing Co.* (5th Cir. 1957), 245 F.2d 783). Generally, in order to establish that an employee's discharge constituted an unfair labor practice in violation of section 8(a)(3) of the NLRA (29 U.S.C. par. 158(a)(3)), the NLRB has to prove that the discharge was motivated by antiunion "animus." (See *NLRB v. Great Dane Trailers, Inc.* (1967), 388 U.S. 26, 18 L. Ed. 2d 1027, 87 S. Ct. 1792; *NLRB v. Turner Tool & Joint Rebuilders Corp.* (5th Cir. 1982), 670 F.2d 637.) In cases where the discharge was motivated by both legitimate business reasons and by reasons related to the employee's exercise of protected activities, courts have found an unfair labor practice only if the employee's exercise of a protected activity was a substantial or a motivating factor in the discharge. *NLRB v. Searle Auto Glass, Inc.* (9th Cir. 1985), 762 F.2d 769; *NLRB v. Horizon Air Services, Inc.* (1st Cir. 1985), 761 F.2d 22.

The United States Supreme Court in *NLRB v. Transporta-*

*tion Management Corp.* (1983), 462 U.S. 393, 76 L. Ed. 2d 667, 103 S. Ct. 2469, approved the NLRB's allocation of the burden of proof in an unfair labor practice discharge case. The General Counsel has the burden of proving that the employee's exercise of a protected activity was a motivating factor in the decision to discharge. (462 U.S. 393, 394-95, 404, 76 L. Ed. 2d 667, 670-71, 677, 103 S. Ct. 2469, 2470-71, 2475.) Once the General Counsel has done so, the employer must do more than merely produce some evidence of a legitimate motive to escape liability. Rather, the employer must prove by a preponderance of the evidence that, although the employee's protected conduct may have been an additional causative factor for the discharge, the company was motivated principally by the employee's unprotected conduct to such an extent that it would have dismissed the worker in any event. (462 U.S. 393, 394-95, 404, 76 L. Ed. 2d 667, 670-71, 677, 103 S. Ct. 2469, 2470-71, 2475.) This effectively imposes an affirmative obligation upon the employer, who must convince the trier of fact that the legitimate motive for discharge existed and was sufficiently compelling. (462 U.S. 393, 394-95, 404, 76 L. Ed. 2d 667, 670-71, 677, 103 S. Ct. 2469, 2470-71, 2475.) Proffering of a legitimate business reason for disciplinary action against an employee does not end the inquiry as to whether the action violated section 8(a)(3), for it must be determined whether these reasons are *bona fide* or pretextual. (462 U.S. 393, 395, 76 L. Ed. 2d 667, 671, 103 S. Ct. 2469, 2471; *Marathon LeTourneau Co., Longview Division v. NLRB* (5th Cir. 1983), 699 F.2d 248.) Furthermore, even evidence of a "good-faith motive" for a discriminatory discharge "has not been deemed an absolute defense to an unfair labor practice charge." *NLRB v. Erie Resistor Corp.* (1963), 373 U.S. 221, 229-30 n.8, 10 L. Ed. 2d 308, 315 n.8, 83 S. Ct. 1139, 1146 n.8; accord *Sure-Tan, Inc. v. NLRB* (1984), 467 U.S. 883, 81 L. Ed. 2d 732, 104 S. Ct. 2803.

On review, we must decide whether, based on the entire record before us, substantial evidence sustains the Board's conclusion that the dismissals of Bogdonas, DePorter, Latino, Mandala, Montalbano and Scott were partly or wholly motivated by the purpose of discouraging union activity at the Rockford highway department. (*NLRB v. Instrument Corp. of America* (4th Cir. 1983), 714 F.2d 324.) The question of motive is one of fact, and the Board's determination will not be overturned if its conclusions drawn from credibility findings and inferences from the evidence are reasonable. (*NLRB v. Instrument Corp. of America* (4th Cir. 1983), 714 F.2d 324; *NLRB v. Comgeneral Corp.* (6th Cir. 1982), 684 F.2d 367.) Where the Board's con-

clusions are reasonable, it does not matter that we might have reached a different result had we been the fact finders. *Jeffrey Manufacturing Division, Dresser Industries, Inc. v. NLRB* (4th Cir. 1981), 654 F.2d 944.

■ The NLRB may rely on circumstantial evidence in determining an employer's motive for discharging employees. (*Dayton Typographic Service, Inc. v. NLRB* (6th Cir. 1985), 778 F.2d 1188; *NLRB v. E.I. DuPont De Nemours* (6th Cir. 1984), 750 F.2d 524.) Antiunion motivation may reasonably be inferred from a variety of factors, including the company's knowledge of union activities (*Turnbull Cone Baking Co. v. NLRB* (6th Cir. 1985), 778 F.2d 292, *cert. denied* (1986), 476 U.S. 1159, 90 L. Ed. 2d 720, 106 S. Ct. 2277; *NLRB v. E.I. DuPont De Nemours* (6th Cir. 1984), 750 F.2d 524, 529, *cert. denied* (1985), 474 U.S. 976, 88 L. Ed. 2d 330, 106 S. Ct. 376), and the proximity in time between the employees' union activities and their discharge. (*NLRB v. E.I. DuPont De Nemours* (6th Cir. 1984), 750 F.2d 524; *NLRB v. Garon* (6th Cir. 1984), 738 F.2d 140, 147.) The evidence of motive examined here stems from whether the Board could have concluded that Rockford had knowledge that the six discharged employees had signed pledge cards and from the significance the Board ascribed to the subsequent hiring of two full-time employees.

On the afternoon of March 8, 1985, 12 Rockford employees signed Teamsters cards. On May 6, 1985, the 12 were fired. The Board found that the discharge of six of them constitutes an unfair labor practice. Rockford contends that these employees were discharged in an effort to reduce the work force by "getting rid of excess baggage." Scherer promised that she would do so during her campaign for office. We, thus, have to ascertain whether the Board's decision that the discharges were not simply in fulfillment of a campaign promise, and, thus, a legitimate action, but rather was motivated by antiunion "animus," was against the manifest weight of the evidence.

■ Generally, employers may defend against the antiunion "animus" charge by showing that they were ignorant of the employee's union activities. (*NLRB v. Eastern Smelting & Refining Corp.* (1st Cir. 1979), 598 F.2d 666; *NLRB v. Computed Time Corp.* (5th Cir. 1979), 587 F.2d 790.) Ordinarily, the NLRB must prove that the employer knew of each employee's union activities' (*Pioneer Natural Gas Co. v. NLRB* (5th Cir. 1981), 662 F.2d 408; *American Thread Co. v. NLRB* (4th Cir. 1980), 631 F.2d 316), but there are cases where such proof is unnecessary. A showing that the vast majority of

discharged employees were union sympathizers has been found sufficient to require the reinstatement of all. (*NLRB v. Nabors* (5th Cir. 1952), 196 F.2d 272, *cert. denied* (1952), 344 U.S. 865, 97 L. Ed. 671, 73 S. Ct. 106). The finding of an unlawful motivation does not depend on the employer's knowledge that each of the discharged employees was engaging in union activity where the respondent's entire pattern of conduct bespeaks an attempt to thwart the organizing efforts. *Eisenberg v. Wellington Hall Nursing Home, Inc.* (1981), 257 NLRB 791, *enf'd in part, rev'd in part* (3d Cir. 1981), 651 F.2 902; *Hedison Manufacturing Co. v. NLRB* (1980), 249 NLRB 791, *enf'd* (1st Cir. 1981), 643 F.2d 32.

The testimony presented at the unfair labor practices hearing does not conclusively show that Rockford had direct knowledge that the affected employees had signed pledge cards. But, as indicated above, where a pattern of conduct on the part of the employer can be established, such direct knowledge is not necessary. In this case as in *NLRB v. Nabors* (5th Cir. 1952), 196 F.2d 272, a sizeable percentage (over 50%) of the work force was laid off, and all of the discharged employees had signed pledge cards. Employees who had not signed the cards were unaffected. Also evidence, albeit controverted, was introduced that some of these employees had received phone calls and had had conversations with a member of Scherer's staff regarding the unfavorable consequences of signing Teamsters cards.

■■ In addition, where the setting is a "small plant" the employer may be charged with knowledge of union activities without the need for direct proof. (See *D & D Distribution Co. v. NLRB* (3d Cir. 1986), 801 F.2d 636.) The essence of the "small plant" doctrine rests on the theory that an employer at a small facility is likely to notice activities at the plant because of the closer working environment between management and labor. (*Alumbaugh Coal Corp. v. NLRB* (8th Cir. 1980), 635 F.2d 1380.) Some courts have held that this doctrine applies only where there is "other, affirmative, evidence indicating the likelihood that the employer in fact knew." *NLRB v. Joseph Antell, Inc.* (1st Cir. 1966), 358 F.2d 880, 883.

Contrary to Rockford's assertion, the "small plant" doctrine is applicable in this case. Rockford contends that at the time of the pledge card signings, neither Scherer nor anybody on her staff was an employee of the highway department and, therefore, not able to directly observe union activities. But, evidence in the record indicates that even though Scherer or her associate were not physically present on March 8, 1985, they may have been able to obtain information from other employees who had witnessed the 12 employees

sign the cards. As such, possible knowledge of concerted activities may be inferred sufficiently to invoke the "small plant" doctrine. But as indicated above, application of the doctrine may not even be necessary, since given the pattern of conduct by Rockford, knowledge on its part is not required for a finding of an unfair labor practice resulting from the discharge of the six employees.

Further, Rockford contends that the Board had not presented evidence showing antiunion animus on the part of the employer. Rockford bases this argument on the fact that Scherer herself had signed a Teamsters pledge card in 1984 and, consequently, could not be antiunion. We find such an inference to be unreasonable. Scherer signed the pledge card under completely different circumstances, when she was still a secretary who did not get along with her supervisor. Now she is the commissioner and her priorities and goals are, quite likely, very different. Therefore, we cannot say that based on her one-time interest in joining a union, the Board's finding of antiunion animus on the part of the employer was against the manifest weight of the evidence.

■■■ Next, Rockford takes issue with the Board's finding that the hiring of two full-time employees and five temporary employees is indicative of the employer's real motive for discharging the six alleged discriminatees, namely their union activities. We do not include the five seasonal employees in our analysis. As stated above, Rockford asserted that these employees were discharged in an effort to trim down the overstaffing, consistent with Scherer's campaign promise. Even though reducing overstaffing may be a legitimate business purpose, it will be found as pretextual when, as here, the discharged employees were replaced by other employees. *NLRB v. Horizon Air Services, Inc.* (1st Cir. 1985), 761 F.2d 22, 28; *NLRB v. Instrument Corp. of America* (4th Cir. 1983), 714 F.2d 324, 329.

In *Northwind Maintenance & Painting Co.* (1986), 281 NLRB No. 48, the NLRB held:

"In assessing the legality of the *** layoffs *** the Union activity of the [discharged] employees was 'a motivating factor' in the [employer's] decision to lay them off. *** That showing is buttressed by caselaw which holds that the *hiring of new employees as replacements* *** is patent evidence that [employer's] attributing the layoff *** to a contract cancellation was pretextual designed to conceal [employer's] unlawful motivation." 281 NLRB No. 48. Accord *Fedco Freightliners, Inc.* (1984), 273 NLRB 399.

In our case, Rockford discharged six permanent employees and

replaced them with two new employees. Under the analysis outlined above, we conclude that the Board's finding of pretext defeating Rockford's legitimate business reasons to discharge the employees in question was not against the manifest weight of the evidence.

Given the fact that there is sufficient evidence in the record to affirm the Board's decision, we do not reach the issue of whether the five temporary employees should be counted in the consideration of whether Rockford had committed an unfair labor practice. We note though that the NLRB held that replacement of permanent employees with part-time employees in the context of union activities is indicative of a violation of section 8(a)(3) of the NLRB. (See *NLRB v. Allen's I.G.A. Foodliner* (6th Cir. 1981), 651 F.2d 438; *Active Industries, Inc.* (1985), 277 NLRB 40; *Two Wheel Corp.* (1975), 218 NLRB 486, *enf'd* (2d Cir. 1976), 542 F.2d 1165.) Furthermore, the NLRB in *Bethlehem Steel Corp.* (1982), 262 NLRB 222 held that:

> "From the credited evidence it is also apparent that [that employer] took care of its backlog of invoices *** by utilizing employees *** who came from another division *** as a *temporary replacement* ***.
>
> Hence, it would appear that *** [the employer's] claim *** that [the affected employee's] discharge was 'based [on legitimate business reasons]' is not well taken. And such, as a 'legitimate business reason,' is prime context." (Emphasis added.) 262 NLRB 235.

We conclude that Rockford violated section 10(a)(2) of the IPLRA (Ill. Rev. Stat. 1985, ch. 48, par. 1610(a)(2)). The decision of the State Labor Relations Board is affirmed.

Affirmed.

INGLIS and WOODWARD, JJ., concur.